[See 32 Fed. 457.]

SOUTHERN PULLMAN PALACE CAR CO. (BLUM v.). See Case No. 1,574.

SOUTHFIELD (BULL v.). See Case No. 2,-120.

## Case No. 13,189.

SOUTH FORK CANAL CO. v. GORDON.

[2 Abb. U. S. 479;[1] 8 Am. Law Reg. (N. S.) 279.]

Circuit Court, D. California. Oct., 1868.

APPEAL—REVERSAL OF JUDGMENT—RIGHTS OF PURCHASER.

1. The mandate of the supreme court, upon a writ of error or appeal, must be promptly and implicitly enforced by the court below, except so far as the enforcement may be modified or restrained by events occurring subsequent to the period covered by the record in the supreme court.

[Cited in The Sabine, 50 Fed. 217.]

2. Such events may often modify the manner of enforcing the mandate.

[Cited in The Sabine, 50 Fed. 217.]

3. If, pending a writ of error or appeal, no stay of proceedings having been obtained, proceedings are taken to enforce the judgment, and property of the defendant is sold under them, the purchaser acquires a good title.

[Cited, but not followed, in Robinson v. Alabama & G. Manuf'g Co., 67 Fed. 193.]

4. This rule is not a measure of protection afforded to strangers bidding at judicial sales only, but extends to the parties or their privies. It rests upon the principle that a judgment of a court having jurisdiction is, however erroneous, efficacious until reversed.

5. The rule governing the restoration, after reversal, is this: that the party unsuccessful in the court below is to be restored by reversal to all things which he lost by the erroneous judgment or decree, if the title to them has not passed by the previous enforcement of the judgment or decree; and if it has, he is, in such case, to have a right of action for a money equivalent.

[Cited in Hays v. Griffith. 85 Ky. 381. 3 S. W. 431, and 11 S. W. 306; Kessel v. Zeiser, 102 N. Y. 119. 6 N. E. 574; Smith v. Zent. 83 Ind. 87; Thompson v. Reasoner, 122 Ind. 457, 24 N. E. 223.]

6. In an action in the circuit court, brought to foreclose a lien upon a canal for labor and materials furnished in constructing it, the court, having jurisdiction of the parties and the subject matter, passed upon the amount of the indebtedness of the South Fork Canal Company to the complainant; upon the existence of the lien asserted, and its extent, and adjudged that the lien extended to the entire flume and canal; and it decreed the sale of the property in case payment of the complainant's demand was not made by a day designated. The payment was not made, and the sale took place, the master following, in all particulars, the direction of the decree. His report of his proceedings was not excepted to, and was confirmed. The complainant was mentioned in the decree as a possible bidder, and provision made

1 [Reported by Benjamin Vaughan Abbott. Esq., and here reprinted by permission.]

for crediting his bid on the amount adjudged due to him. The master reported that H., the assignee of the complainant. became the purchaser. and when the report was confirmed, the master was directed to execute to him a deed of the property. *Held*, that the purchaser acquired a title to the premises which could not be divested by a reversal, in the supreme court, of the judgment; although such reversal proceeded upon the ground that the lien established by the complainant extended to a portion of the canal only, and that the judgment was erroneous in directing the whole to be sold.

Motion for entry of a decree to carry into effect the mandate of the supreme court upon an appeal.

This suit was in the nature of a bill in equity by George Gordon against the South Fork Canal Company, and others, to enforce a lien, claimed under the statutes of California, for labor and materials furnished by the complainant in the construction of that portion of the company's canal which extended from section seventeen to section twenty-five inclusive; a distance of about nine miles. On March 16, 1853, the complainant and one Kinyon contracted with the South Fork Canal Company, for the construction of the canal proposed by the company. By the agreement the work was to be completed by July 1, 1853; and it was promptly commenced by the contractors. The contract called for monthly estimates and payments. The first installment was paid by the company but they were unable to pay those which afterwards accrued. By this failure the contractors were rendered unable to pay hands, and were compelled to abandon the work. They thereupon filed a notice, pursuant to a statute of the state of California, claiming a lien upon the canal for the sum of one hundred and six thousand four hundred and eighteen dollars, then due for their labor and materials; and afterwards filed a similar notice claiming a further lien. To enforce this lien, the present suit was brought, Kinyon having released his right. The defendants demurred to the bill, as originally filed; and the demurrer was sustained, for want of proper averments to give jurisdiction. The bill being amended in that respect. a plea was interposed contesting the validity of the lien claimed by the complainant; and this issue, having been argued before McAllister, Circuit Judge, was determined in favor of the complainant. His opinion is reported, Gordon v. South Fork Canal Co. [Case No. 5,621].

The cause was afterwards brought to hearing upon pleadings and proofs. when an interlocutory decree was rendered at October term, 1864, by which it was adjudged that the demand of the complainant for the work performed and materials furnished in the construction of the canal of the defendants, from section seventeen of the canal to section twenty-five inclusive, under the contract of March 16, 1853, was, to the extent of reasonable value, a lien upon the portion of the canal constructed paramount to all other liens set forth in the pleadings; and it was referred

to a master to take and state an account of the value of such work and materials, and to ascertain the amount paid to the complainant, and report the same to the court. The master was also directed to compute the amount of interest due on the estimated value of the work and materials, from June 13, 1853, to the date of the computation, at the rate of ten per cent. per annum. In December, 1864, the master made his report; and no exceptions being taken to it by any of the parties, it was confirmed. The master found the value of the work bestowed and the materials furnished in the construction of the canal, from section seventeen to section twenty-five inclusive, to be seventy-six thousand five hundred and ninety-eight dollars and eighty-nine cents, and the amount paid to the complainant upon the contract to be six thousand two hundred dollars, and he computed the interest due on these sums up to November 30, 1862. The master also found the value of what he termed preliminary work and materials, that is, for work done and materials furnished in preparation for the construction of the canal; but the circuit court held, on the motion to confirm this report, that no lien could be claimed for these, but it must be limited to work and materials which actually entered into the thing constructed; and it would therefore be allowed only for the amount of seventy-six thousand five hundred and ninety-eight dollars and eighty-nine cents, with interest, deducting the amount paid, as above stated.

Upon the motion to confirm this report, however, the question was urged upon the court, whether the lien to which the complainant was entitled was restricted to those sections of the canal upon which his labor and materials had been particularly bestowed or whether it extended to the entire work. The following is so much of the opinion of the court as relates to this question:

FIELD, Circuit Justice (after reciting previous proceedings and determining the amount for which a lien might be decreed). The more important question for determination is whether the lien shall be declared to extend upon the entire line of the canal, and be enforced against the whole, or be declared to exist upon the sections actually constructed under the contract, and be enforced only against that portion.

In the interlocutory decree a lien was only declared to exist upon the sections named. Our attention in considering the case had been especially directed to the question of the existence of any lien, and little had been said by counsel on either side as to the extent of the canal upon which the lien, if declared, would attach. Upon the final hearing our attention has been particularly called to this matter, and from the reading of the statute we are satisfied that we erred in limiting the lien to the particular sections named. The canal is to be regarded as an entire thing—as a building is to be regarded to which additions or repairs are made. The lien is obviously not restricted to the wing added, or the chamber or roof repaired, but extends to the whole structure. The statute of April 12, 1850, provides that "all master-builders, mechanics, lumber merchants, and all other persons performing labor or furnishing materials for the construction or repairs of any building or wharf, shall have a lien, separately or jointly, upon the building or buildings or wharf which they may have constructed or repaired, or for which they may have furnished material of any description, to the extent of the labor done, or materials furnished, or both." Laws 1850, c. 87, § 1.

And the statute of May 17, 1863, declares that the previous act of 1850 "shall be so extended as to include in its provisions bridges, ditches, flumes, or aqueducts constructed to create hydraulic power or for mining purposes; and all master-builders, mechanics, contractors, journeymen, or laborers, and all other persons performing labor or furnishing materials for or employed in the construction or repair of any bridge, ditch, flume, or aqueduct aforesaid, shall have the same lien, subject to the same provisions and regulations as in and by said act is provided for liens upon buildings and wharves." Laws 1853, c. 148, § 1.

As will be perceived, by this last act, the lien is given upon the bridge, ditch, flume, or aqueduct,—that is, upon the whole of each work, not upon a part of either,—where labor is performed or materials are furnished for or employed in their construction or repair. It is not essential to create the lien that the labor or materials should cover the entire work; the lien goes upon the whole for the construction or the repair of any portion.

The statute leaves no room for doubt on the question presented, but determines it in favor of the complainant.

And there is nothing in the adjudication of the interlocutory degree, which prevents the extension of the lien on the final hearing. A court of equity can, at such hearing, or at any time before, enlarge or restrict or otherwise modify the provisions of its interlocutory orders or decrees, either upon the petition of the parties, or upon its own further consideration of the law and the evidence. The whole case is under its control until the final decree is rendered. Calk v. Stribling, 1 Bibb, 128; Cook v. Bay, 4 How. (Miss.) 485.

A decree will be entered extending the lien, and directing a sale of the entire canal, and the application of the proceeds to the payment of the demand of the complainant, as stated in this opinion.

From the decree entered in conformity to this opinion the defendants appealed to the supreme court. A bond for costs on appeal was executed; but no supersedeas was obtained or asked. Proceedings under it were

therefore prosecuted; a sale was made, and a report thereof confirmed.

The appeal being brought to a hearing in the supreme court, that court, while holding the decree below correct in other respects, adjudged it erroneous in extending the lien of the complainant to the entire canal; holding that such lien must be restricted to the particular sections constructed by the complainant. It therefore reversed the decree appealed from, and remanded the cause to this court, with directions to enter a decree in conformity with its opinion. The decision is reported, 6 Wall. [73 U. S.] 561. Justices Field, Grier, and Miller, dissented.

The defendants now apply for the entry of a decree pursuant to this decision.

FIELD, Circuit Justice, after stating the proceedings in the cause, proceeded as follows:

The defendants have filed the mandate, and now ask not only obedience to its commands, but also that the sale made under the decree reversed be set aside, and the property sold be restored to them. The purchaser at the master's sale and his vendee appear in opposition to the latter application.

Obedience to the mandate of the supreme court will always be rendered by this court. It will be a prompt and implicit obedience; but we trust it will be, as it should be, an intelligent, not a blind obedience. The judgments of that tribunal are founded upon the records before it, and those judgments will be unhesitatingly enforced, except as their enforcement may be modified or restrained by events occurring subsequent to the period covered by the records. That such events may modify, and often do modify the mode and manner of enforcement, is well known to all members of the profession. The death of the parties, partial satisfaction, changes of interest subsequent to judgment, and sales upon the judgment pending the appeal, are instances where this result is frequently produced.

The decree which this court will enter under the mandate of the supreme court will, like the previous decree, adjudge, as the amount due, the sum reported by the master, with interest; but it will declare that it is a lien only upon that portion of the canal which is embraced between sections 17 and 25 inclusive, which were constructed by the complainant. Whether it will go further, and order the enforcement of such lien by directing a sale of the particular sections, will depend upon the effect of the reversal of the decree upon the previous sale; and this brings us to the second part of the defendant's motion.

There is some contradiction in the adjudged cases as to the effect of a reversal of a judgment or decree upon rights acquired under it. This contradiction has arisen principally, if not entirely, from not distinguishing between the effect of the reversal upon the rights of the parties with respect to the subject matter in controversy, and its effect upon rights acquired on proceedings taken for its enforcement;

and yet the difference in the operation of the reversal in the two cases is obvious, and need only be stated to be recognized.

For instance, it is adjudged that the defendant is indebted to the plaintiff in a certain sum of money, and that the plaintiff recover the same. Here the operation of the judgment is to determine the fact of indebtedness, as well as to authorize the use of the means provided by law for its collection. The reversal of the judgment changes the entire relation of the parties; it recalls the affirmation of indebtedness, and denies its existence. If such supposed indebtedness has been collected whilst the judgment remained in force, the reversal necessarily requires that restitution should be made.

On the other hand, if whilst the judgment remains unreversed proceedings are taken for its enforcement, and property of the defendant is sold under them, the purchaser acquires a good title. The judgment being valid, and its enforcement not being stayed, all persons relying upon it are protected; for it is a general principle that a judgment rendered by a court having jurisdiction of the parties and subject matter, however erroneous, is until reversed, as efficacious for all purposes as though approved by the highest tribunal of the land. To the errors which the court may have committed in its rendition, persons trusting to its protection need pay no attention. Were it not so, the judgment would be of no avail to the successful party until it has been approved by the highest appellate tribunal, or until the time to appeal has expired. The doctrine in this respect is well expressed in Gray v. Brignardello, 1 Wall. [68 U. S.] 627. In that case it appeared that certain real property had been ordered sold by one of the district courts of California, in a suit brought to settle an alleged copartnership between certain parties, one of whom had died intestate. The court adjudged that a copartnership had existed between the parties named, and that the real property in question belonged to such copartnership, and directed its sale. The property was accordingly sold. Subsequently, the supreme court of the state reversed the decree, holding that the alleged copartnership was not established by the proofs. The heirs of the deceased party then brought ejectment in the circuit court of the United States, for parcels of the property sold. In that court and in the supreme court, where the case was subsequently carried, it was contended by their counsel that the decree authorizing the sale having been reversed, the sale fell with it; but the court in reply, said: "It is a well settled principle of law, that the decree or judgment of a court which has jurisdiction of the person and subject matter, is binding until reversed, and cannot be collaterally attacked. The court may have mistaken the law or misjudged the facts, but its adjudication, when made, concludes all the world until set aside by the proper appellate tribunal. And, although the judgment or decree may be re-

versed, yet all rights acquired at a judicial sale while a decree or judgment was in full force, and which it authorized, will be protected. It is sufficient for the buyer to know that the court had jurisdiction, and exercised it, and that the order on the faith of which he purchased was made, and authorized the sale. With the errors of the court he has no concern."

But whilst this doctrine is admitted to be in general correct, it was contended on the argument that it applies only to strangers to the judgment or decree, and does not extend to parties or their privies. And expressions were cited from various opinions of different judges, to the effect that by the reversal the defendant or unsuccessful party in the court below is to be restored to all things which he lost by the erroneous judgment or decree, and that protection is afforded to strangers at judicial sales in order to encourage bidding. Expressions of this kind may be very just and appropriate in connection with the particular facts of the special cases in which they are used; but they do not express a rule applicable in all cases, or furnish the true reason for the protection extended to purchasers at judicial sales. The principle that the defendant or unsuccessful party in the court below is to be restored to all things which he lost by the erroneous judgment or decree, cannot apply to those things the title of which may be transferred by proceedings taken for the enforcement of the judgment or decree when its enforcement is not stayed pending the appeal. The restoration in specie in such cases being impossible without infraction of the principle by which judgments of courts are upheld and enforced, it follows that the right which the reversal gives must be that of action to recover an equivalent for the lost thing. And perhaps the rule may be stated thus: That the defendant or unsuccessful party in the court below is to be restored, by reversal, to all things which he lost by the erroneous judgment or decree, if the title to them has not passed by the previous enforcement of the judgment or decree; and in such case he is to have a right of action for a money equivalent. The rule, as thus stated, would leave the parties to take advantage of the proceedings for the enforcement equally with third persons. There is no reason why they should not have the same protection extended to them as to strangers. The judgment or decree is equally binding upon all, and should be equally efficacious for protection. When the judgment or decree directs a sale of property of the defendant, it may be regarded as a power of attorney to the officer charged with its execution created by the law, and, like any other power, sufficient to give validity to the acts of the officer until the power is revoked by the reversal. There is no prohibition in the law, or objection in the reason of the thing, against a party taking advantage of the proceedings had for the enforce-

ment of the judgment which he has recovered. Strangers are protected, not because a contrary rule would discourage bidding, but because they have a right to rely upon the validity of the judgment, and invoke its protection for all acts done under it whilst it is in force, and for the rights they have acquired thereby. That the rule also has the effect of encouraging bidders at the sale is evidence of its wisdom, but is not the reason of its establishment. In Parker v. Anderson, 5 T. B. Mon. 455, real property belonging to one Parker had been sold under a decree of a court of equity which was subsequently reversed. At the sale one Anderson became the purchaser; and after reversal, in a suit brought by the heirs of Parker against the heirs of Anderson, the court below refused to compel a surrender of the title of the property. The court of appeals of Kentucky, where the case was taken, held the ruling correct.

"The decree," said that court, "under which both the legal and equitable title was derived, it is true has since been reversed by the decision of this court; but neither from analogy to legal proceedings, nor the principles and usages of equity, can the reversal of the decree under which the lot was sold and the title conveyed authorize a court of chancery to decree a reconveyance of the title so obtained. The doctrine is well settled at law, that an estate sold under a writ of fieri facias will be retained by the purchaser, though the judgment upon which the execution issued may be afterwards reversed; and the rule is the same in equity, where land is sold under the decree of a court of equity, and the decree is afterwards reversed. After the reversal of a judgment at law, or the decree of a court of equity, the person prejudiced by the decree is entitled to the proceeds of the estate sold, either under execution upon the judgment, or in obedience to the judgment, or in obedience to the decree; and it would, no doubt, be competent for a court of law or equity to compel restitution of the money for which the estate sold. But both law and equity guard, with great circumspection, the interest derived by purchasers under the processes of courts of law, or the decrees of courts of equity; and unless there be unfairness in the transaction, the title which the purchaser acquires, either by the sale of an officer acting under a fieri facias at law, or the sale of a commissioner acting under the decree of a court of equity, will never, upon the reversal of a judgment or decree, be disturbed.

"The rule was, in argument, admitted to be, in the general, correct; but it was attempted to limit its application to purchasers who are neither parties nor privies to the judgment or decree under which the sale is made. The reason for such a limitation of the principle is not, however, perceived by us, and we have met with no adjudged case, either at law or equity, wherein any

such exception to the rule has been made. The parties to a judgment or decree are, equally with all others, at liberty to bid and purchase property exposed for sale under the authority of a judgment or decree, and there is the same reason for protecting the same interest acquired by a party under a purchase as that of a stranger." .

With the views thus forcibly expressed we fully concur.

The only case which at all conflicts with it to which we have been referred, is that of Reynolds v. Harris, decided by the supreme court of this state (14 Cal. 667). The circumstances of that case are peculiar. Separate parcels of real property, consisting of mining canals and ditches, had been mortgaged by different parties to secure the same indebtedness. The decree of forclosure directed the sale of the property upon terms variant from those prescribed by the statute, and in such a manner as to defeat the right allowed by the law of the state of some of the mortgagors to redeem the separate parcels mortgaged by them.

At the sale, the mortgagee and complainant in the foreclosure purchased the entire property—two of the parcels mortgaged being struck off together upon one bid—and received the officer's certificate of the sale—a certificate which would entitle him to a deed at the end of six months, if no redemption were made in the mean time; but which redemption, from the manner of sale, was impossible with reference to one of the parcels. The amount to be paid to redeem the separate parcels could not be ascertained, as they were sold together. The certificate of sale and the decree were subsequently assigned to Harris. Afterwards the decree was reversed so far as it directed the sale, and on petition of defendants the sale was set aside, and the credit allowed for the amount bid vacated.

It will be thus seen that the sale was not perfected when the proceedings were set aside, and upon this fact, together with the departure in the sale from the directions of the statute, the action of the court may be sustained. But there is much in the opinion which we think requires qualification, and which, without qualification, we are satisfied, from the extended examination we have given to the authorities, is unsupported by any well considered adjudication. We find no case which draws the distinction there taken between parties and strangers, and makes the upholding of a judicial sale, after reversal of the judgment or decree under which it was made, depend upon the character of the purchaser.

If now we test the question presented by the application before us, we shall find it one of easy solution. This court, in rendering its decree of September, 1865, had jurisdiction of the parties and of the subject matter. It passed upon the amount of indebtedness of the South Fork Canal Company to the complainant, upon the existence of the lien asserted, and its extent. It adjudged that the lien extended to the entire flume and canal, and it decreed the sale of the property in case payment of the complainant's demand was not made by a day designated. The payment was not made, and the sale took place, the master following in all particulars the direction of the decree. His report of his proceedings was not excepted to, and was confirmed. The complainant was mentioned in the decree as a possible bidder, and provision made for crediting his bid on the amount adjudged due to him. The master reported that the assignee of the complainant, Hosmer, became the purchaser, and when the report was confirmed, the master was directed to execute to him a deed of the property. If Hosmer and his grantee cannot, under these circumstances, trust to the title thus acquired, it is difficult to imagine any case of judicial sale which may not be vacated upon a subsequent reversal of the judgment or decree under which it is had. We are clear that the purchaser took a title to the premises which cannot be disturbed. That part of the motion, therefore, which asks that the sale be set aside, and the property sold restored to the defendant, is denied; and the decree to be entered on the mandate of the supreme court will contain the provisions already mentioned, without directing the enforcement of the lien upon the sections named.

The defendants are entitled to have the costs incurred by them in the supreme court credited on the amount found by the master as due the complainant.

Counsel of the complainant will prepare a draft of the decree, and present it for settlement, upon notice, to the counsel of the defendants. Decree accordingly.