## The Sabine.

*(Circuit Court, E. D. Louisiana. April, 1881.)*

DECISION ON APPEAL—EFFECT OF MANDATE—COMPROMISE.

 A decree was rendered upon a bond against the principal and against two sureties for certain limited amounts in which they were bound. The sureties compromised their liability, but the principal afterwards appealed to the supreme court, where the decree was affirmed in all respects. *Held,* that the circuit court was not bound by the mandate, so as to allow execution to go against the sureties, either for the whole of the decree against them or for the excess over the sums paid in satisfaction of the whole.

In Admiralty. Heard upon motions to quash executions. Granted.

The original case was a suit in admiralty, brought February 16, 1872, by the owners of the Sabine against the steamboat Richmond, to recover damages sustained by the Sabine resulting from a collision between her and the Richmond, near Twelve Mile point, on the Mississippi river, on February 11, 1872. The owners of the Richmond filed an answer, and also a cross libel against the owners of the Sabine. In the latter they claimed a decree for damages sustained, in consequence of the collision, by the Richmond, they alleging that the collision was caused by the fault of the Sabine. Upon the filing of the cross libel the district court, by the authority of the admiralty rule No. 53, ordered that all proceedings upon the original libel be suspended until the original libelants gave bond to respond in damages to the cross libel. In pursuance of this order, on March 14, 1872, the owners of the Sabine, with Alfred Moulton, Jules Tuyes, Charles Cavaroc, and Achille Chiapella as sureties, executed a bond of that date in favor of the owners of the Richmond in the sum of $8,000. By the terms of the bond, Moulton and Tuyes each became bound in the sum of $2,000 only, and they each justified in that amount. Upon trial a decree was rendered dismissing the libel of the Sabine against the Richmond, but sustaining the libel of the Richmond against the Sabine, and awarding to the owners of the Richmond the sum of $9,750 for the damage sustained by her, and rendering a decree in their favor against Jules Tuyes and Alfred Moulton for $2,000 each. From this decree, an appeal being taken to the circuit court by

the sureties upon the bond given by the owners of the Sabine upon a cross libel of the Richmond, the circuit court, on April 10, 1875, rendered a decree in favor of the Richmond against the Sabine for the damages sustained by the former in consequence of the collision. Afterwards, on March 11, 1876, upon the report of the master, the amount of the damages was fixed at $8,000, which the owners of the Sabine were condemned *in solido* to pay. At the same time decrees were rendered against Jules Tuyes and Alfred Moulton, sureties on the bond aforesaid, for $2,000 each. On July 3, 1876, Jules Tuyes compromised the decree against him in favor of the owners of the Richmond by paying the latter, in full satisfaction thereof, the sum of $1,166.66, and was by them subrogated to their rights as owners of the decree. The following is a copy of the paper by which this settlement was evidenced:

"SHIRLEY et als., OWNERS OF THE SABINE v. THE RICHMOND.

"*United States Circuit Court:* Received, New Orleans, July 3, 1876, from Jules Tuyes, Esq., security on the bond given by the libelants in the above cause to respond to the cross libel filed by N. S. Green and others, claimants of the steamboat Richmond, the sum of $1,166, and in full satisfaction of the decree rendered against him in the above-entitled cause, and I hereby subrogate him to the rights of N. S. Green and owners of the steamboat Richmond.                    KENNARD, HOWE & PRENTISS,

"Attorneys for Owners of Richmond."

Afterwards, September 28, 1876, the Home Insurance Company paid, in behalf of Alfred Moulton, to the owners of the Richmond, the sum of $1,500, which the owners of the Richmond acknowledged to be in full settlement as a compromise of the liability of Moulton on said bond, signed by him. It was in fact a compromise of the decree for $2,000 which had been rendered against Moulton on said bond. On November 2, 1876, the owners of the Sabine filed a petition for appeal from the decrees of the circuit court hereinbefore mentioned, upon giving bond to cover costs, which was allowed, and on December 16, 1876, they gave an appeal bond in the sum of $500. Neither Tuyes nor Moulton joined in the petition for appeal, and neither of them became obligors upon the appeal bond. At the October term, 1880, of the supreme court the decree of the circuit court of March 11, 1876, was in all respects affirmed, and a mandate was sent down to the circuit court. After the mandate of the supreme court, showing the affirmance of the decree of the circuit court, had been entered in the latter court, an execution was issued on the decree against Tuyes and Moulton rendered by the circuit court March 11, 1876, on their bond above mentioned, and affirmed as aforesaid by the supreme court. The marshal being about to seize the property of Tuyes and Moulton to satisfy the execution, they each for himself filed a motion to quash the execution, on the ground that the decrees against them respectively had been satisfied. Upon these motions the cause was heard.

*C. E. Schmidt,* for Jules Tuyes.

*C. B. Singleton* and *R. H. Browne,* for Alfred Moulton.

*John A. Campbell,* for owners of the Richmond.

Woods, Circuit Justice. It is insisted by counsel for the owners of the Richmond that the decree of the circuit court, as well that part of it which condemned Tuyes and Moulton to pay $2,000 each as that part by which the owners of the Sabine were compelled to pay $8,000 to the same parties, having been affirmed by the supreme court, and the mandate of that court having been received, this court has no discretion, but must execute the decree in all respects as it has been affirmed. The result of this contention would be that Tuyes and Moulton, who had once compromised and satisfied the decrees against them respectively, would be compelled to pay them again. I do not think the law requires of this court a course of administration which would produce such a result. This court is not, under all circumstances, bound to render a servile obedience to the mandate of the supreme court. It is bound to exercise a judicial discretion in the interpretation and execution of the mandate. In the case of *Story* v. *Livingston*, 13 Pet. 373, the supreme court said, in reference to its mandate, that "it is to be interpreted according to the subject-matter to which it has been applied, and not in a manner to do injustice." In *Ex parte Morris*, 9 Wall. 605, the supreme court, having reversed a decree rendered against Morris and Johnson by the district court, by its mandate directed the marshal to make restitution to them of whatever they had been compelled to pay under that decree. Pending the appeal, the whole amount of the decree had been collected from them by execution. A part of the money so collected had been distributed by order of the court. The residue the marshal had, by order of the interior department, deposited in a national bank, which had failed since the deposit had been made. These facts were held by the supreme court to exonerate the marshal, and excuse him from obedience to the mandate of the court. See, also, *Supervisors* v. *Kennicott*, 94 U. S. 498. When the appeal taken does not supersede the decree, and such was the appeal taken in this case, the appellee, notwithstanding the appeal, may take out execution, and enforce the payment of the decree. It has never been supposed that money so collected could, after the affirmance of the decree, be again collected. A voluntary payment stands on the same footing. It is not the practice of the supreme court, in affirming or reversing a decree, to take notice of payments or adjustments subsequent to the decree of the court below. These matters belong to the circuit court to consider after it shall have received the mandate of the supreme court. Thus in *The Kalorama*, 10 Wall. 204, it was said by Mr. Justice Clifford:

"Payments have been made by the respondents since the decree was entered in the district court, but the court here is not asked to revise the finding of the district court as to the amount, nor to deduct the payments since made, as those matters will be adjusted under the stipulations executed between the parties."

So in *Canal Co.* v. *Gordon*, 2 Abb. (U. S.) 479, it was said by Mr. Justice Field:

"Obedience to the mandate of the supreme court will always be rendered by this court. It will be a prompt and implicit obedience; but we trust it

will be, as it should be, an intelligent, and not a blind, obedience. The judgments of that tribunal are founded on the records before it, and these judgments will be unhesitatingly enforced, except as their enforcement may be modified or restrained by events occurring subsequent to the period covered by this record. That such events may modify, and often do modify, the mode and manner of enforcement is well known to all members of the profession. The death of parties, partial satisfaction, changes of interest subject to judgment and sales upon the judgment pending the appeal, are instances where this result is frequently produced."

It follows from these authorities, if it, indeed, needed any authority to support so obvious a proposition, that payments or compromises made in his own behalf by a party to a decree after its rendition in the court below are to be noticed and enforced by the inferior court after the affirmance of the decree by the supreme court and the return of its mandate. It is conceded, however, by counsel for the execution creditors that Tuyes and Moulton are entitled to be credited on the execution with the amounts paid by them in compromise of the decrees rendered against them, but it is insisted that they are entitled to no more. This concession, it seems to me, yields the whole case. Tuyes and Moulton insist that the decrees against them have been discharged by accord and satisfaction. The accord and satisfaction is clearly established. It is impossible to hold that they would be entitled to the benefit of full or partial payment, and to deny them the benefit of their accord and satisfaction. Both these methods of satisfying a decree, so far as the question in hand is concerned, stand on precisely the same footing.

But it is insisted that the adjustments made with Tuyes and Moulton were compromises. and that the compromises failed; therefore the appellees were remitted to their original rights, and can collect the balance of their decrees not covered by the compromise payments. It is true, the adjustments were compromises, but the compromises have not failed. Those compromises were that the appellees should receive a certain sum in full satisfaction of the decree. This was agreed to by the debtors; the money was paid, and a release executed. So far from the compromises failing, they were fully executed and performed. When these compromises were made it was perfectly well known to the owners of the Richmond that Tuyes and Moulton could not prevent the owners of the Sabine from carrying up the decree by appeal. They never agreed that there should be no appeal. They compromised and satisfied the decrees against themselves. They took no appeal, for they had nothing to appeal from. They were out of the case. It is true that, if the decree of the circuit court had been reversed, the reversal would have extended to the decree against Tuyes and Moulton. But that would have been of no benefit to them. They could not have recovered back the compromise money voluntarily paid before the appeal in satisfaction of the decree. No reason is perceived why the execution in question should be allowed to proceed against the property of Tuyes and Moulton. They have both satisfied the decrees upon which the execution is issued. The affirmance by the supreme court of the entire decree of the circuit court does not make this any the less a fact. It would not be just to compel another

satisfaction by Tuyes and Moulton. As to Tuyes, he is in fact subrogated to the rights, so far as they have any, of the owners of the Richmond in the decree against himself. If the decree is not satisfied, he is, in effect, its owner, so that the levy of this execution upon his property is an attempt to compel him to pay a decree which he has compromised, and the owners of which have attempted to subrogate him to their rights therein. In short, it is an attempt to enforce by execution payment of a decree which, if it is not already satisfied, is the property of the person from whom its payment is to be exacted. No question is made in reference to the method adopted by Tuyes and Moulton to gain the relief prayed for. The power to control their own process so as to prevent injustice is one which belongs to all courts. *McHenry* v. *Watkins*, 12 Ill. 233; *Russell* v. *Hugunin*, 1 Scam. 562; *Adams* v. *Smallwood*, 8 Jones, (N. C.) 258; *Barnes* v. *Robinson*, 4 Yerg. 186; *Azcarati* v. *Fitzsimmons*, 3 Wash. C. C. 134; *Davis* v. *Shapley*, 1 Barn. & Adol. 54; *Humphreys* v. *Knight*, 6 Bing. 572. The exercise of this power is invoked by their motions, and there seems to be no good reason why the relief asked for should not be granted. The motions are allowed.